# EXHIBIT A
# PRIMARY POLICY

# HOUSTON CASUALTY COMPANY
## Houston, Texas

NOTICE: THIS IS A CLAIMS MADE POLICY WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR, IF APPLICABLE, THE DISCOVERY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED, AND MAY BE EXHAUSTED, BY THE PAYMENT OF DEFENSE COSTS. DEFENSE COSTS WILL BE APPLIED AGAINST THE RETENTION. THE INSURER HAS NO DUTY UNDER THE POLICY TO DEFEND ANY INSURED.

## DECLARATIONS

### DIRECTORS, OFFICERS AND CORPORATE LIABILITY INSURANCE POLICY

POLICY NUMBER: 14-MG-16-A12939                RENEWAL OF:  14-MG-15-A12411

**ITEM 1.**   **NAMED CORPORATION:**   Syncora Holdings Ltd.
Canon's Court, 22 Victoria Street
Hamilton, HM 11

**ITEM 2.**   **POLICY PERIOD:**
    (a)   Inception Date:     8/3/2016
    (b)   Expiration Date:    8/3/2017
at 12:01 a.m. at the Principal Address stated in Item 1.

**ITEM 3.**   **LIMIT OF LIABILITY** (inclusive of **Defense Costs**):
$20,000,000 in the aggregate for all INSURING AGREEMENTS combined.

**ITEM 4.**   **RETENTIONS:**
    (a)   INSURING AGREEMENT A:       $0 or minimum required under applicable law, if any
    (b)   INSURING AGREEMENT B(1):    $1,000,000 for **Loss** arising from **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts** (waivable under the circumstances described in CONDITION (A)(5))
    (c)   INSURING AGREEMENT B(2):    $1,000,000 for **Loss** arising from **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts** (waivable under the circumstances described in CONDITION (A)(5))

**ITEM 5.**   **PREMIUM:**  $94,345.00

**ITEM 6.**   **NOTICES REQUIRED TO BE GIVEN TO THE INSURER MUST BE ADDRESSED TO:**

| **Street Address:** | **Facsimile Number:** | **E-mail Address:** |
|---|---|---|
| Tokio Marine HCC – D&O Group<br>8 Forest Park Drive<br>Farmington, CT  06032<br>Attn: Claims Manager | (860) 676-1737 | usclaims@tmhcc.com |

**ITEM 7.**   **DISCOVERY PERIOD:**
    (a)   Premium:   150% of the annual Premium
    (b)   Duration    365 days

**ITEM 8.**   **ENDORSEMENTS ATTACHED AT ISSUANCE:**
991-315  991-327  991-334  991-342  991-344  991-354  991-359  991-372  991-386  991-393  991-404  991-444  991-450  991-455  991-462  991-463  991-600  991-742  991-771  991-800  991-828  991-853  991-1305  80009

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed on the Declarations Page by its President, a Secretary and a duly authorized representative of the Insurer.

|     |     |     |
|---|---|---|
| Secretary | President | Authorized Representative |

Date: September 9, 2016

HC 990 (04/2002)

ENDORSEMENT NUMBER:  1

**AMEND DEFINITION OF INSURED PERSON TO INCLUDE
EMPLOYEES AS CO-DEFENDANTS IN NON-SECURITIES CLAIMS**

To be attached to and made a part of Policy No. 14-MG-16-A12939, issued to
Syncora Holdings Ltd. by Houston Casualty Company.

In consideration of the premium charged, it is agreed that subsection (2) of DEFINITION (F) **Insured Person** is deleted and replaced with the following:

(2)      any past, present or future employee of the **Company**, but only with respect to:

      (a)     **Securities Claims**; or

      (b)     any other **Claim** during such time that such **Claim** is made and maintained against at least one other **Insured**.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
               Attorney-in-Fact

ENDORSEMENT NUMBER:  2

**EMPLOYED LAWYERS EXTENSION FOR SPECIFIC INDIVIDUAL(S)**

To be attached to and made a part of Policy No. 14-MG-16-A12939, issued to Syncora Holdings Ltd. by Houston Casualty Company.

In consideration of the premium charged, it is agreed that:

(1)     DEFINITION (F) **Insured Person** is amended to include any **Employed Lawyer**.

(2)     DEFINITION (P) **Wrongful Act** is amended to include any actual or alleged act, error, misstatement, misleading statement, omission or breach of duty by an **Employed Lawyer**, in his or her capacity as such, in the rendering of or failure to render professional legal services for the **Company**; provided, that **Wrongful Act** will not include any actual or alleged act, error, misstatement, misleading statement, omission or breach of duty by any **Employed Lawyer** in connection with any services or activities that are:  (i) not related to his or her employment with the **Company**; (ii) not rendered on behalf of the **Company** at the **Company's** written request; or (iii) performed for others for a fee.

(3)     The DEFINITIONS section of this Policy is amended to include the following:

        **Employed Lawyer** means any person listed hereunder, but only during such time that such person is a full-time salaried employee of the **Company**, employed by the **Company** full-time as a lawyer, and admitted to practice law:

            James Lundy
            Rav Karamsingh
            R. Sharon Smith
            Matthew Morse
            Thomas Amico

(4)     The EXCLUSIONS section of this Policy is amended as set forth below:

    (a)     The following EXCLUSIONS are added:

        The Insurer will not be liable to make any payment of **Loss** in connection with a **Claim** against any **Employed Lawyer**:

        (i)     arising out of, based upon or attributable to any **Wrongful Act** committed or allegedly committed when such **Employed Lawyer** was not employed by the **Company** as a lawyer;

        (ii)     arising out of, based upon or attributable to any **Wrongful Act**, if as of 5/3/2014, such **Employed Lawyer** knew or could have reasonably foreseen that such **Wrongful Act** could give rise to a **Claim**; or

        (iii)     arising out of, based upon or attributable to any **Wrongful Act** committed or allegedly committed by such **Employed Lawyer** in his or her capacity as a director, officer or employee (or functional equivalent of the foregoing) of any entity other than the **Company**.

    (b)     Solely with respect to **Claims** against an **Employed Lawyer**, EXCLUSION (I) is deleted and replaced with the following:

        (I)     arising out of, based upon or attributable to any pending or prior litigation as of 5/3/2014, or alleging or derived from the same or essentially the same facts or circumstances as alleged in such pending or prior litigation.

(5)     For purposes of the coverage afforded by this endorsement, the **Company** will be deemed to have indemnified the **Employed Lawyer** to the fullest extent permitted by law, and the certificate of incorporation, charter, articles of association and other organizational documents of the **Company**, including the bylaws and resolutions thereof, will be deemed to have been adopted or amended to provide indemnification and advancement to the **Employed Lawyer** to the fullest extent permitted by law.

(6)     The coverage afforded by this endorsement will be specifically excess of, and will not contribute with, any other insurance available to the **Employed Lawyer**, including but not limited to lawyers professional liability, legal malpractice and errors and omissions insurance.  Accordingly, the coverage afforded by this endorsement will not attach unless and until such other insurance has been exhausted by the actual payment of losses thereunder.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
                    Attorney-in-Fact

ENDORSEMENT NUMBER:  3

**AMEND CLAIM TO INCLUDE TOLLING AGREEMENTS**

To be attached to and made a part of Policy No. 14-MG-16-A12939, issued to Syncora Holdings Ltd. by Houston Casualty Company.

In consideration of the premium charged, it is agreed that the following sentence is added to DEFINITION (B) **Claim**:

**Claim** also means any written request or agreement to toll or waive any applicable statute of limitations in connection with any of the foregoing.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
             Attorney-in-Fact

991-334                                Page 1 of 1
Ed. 02/07

ENDORSEMENT NUMBER:  4

**AMEND DEFINITION OF CLAIM**

        To be attached to and made a part of Policy No. 14-MG-16-A12939, issued to Syncora Holdings Ltd. by Houston Casualty Company.


In consideration of the premium charged, it is agreed that subsection (5) of DEFINITION (B) **Claim** is deleted and replaced with the following:

        (5)        the receipt by an **Insured Person** of a target letter or similar document, including a subpoena, in connection with an investigation of such **Insured Person**, or



All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

        Effective date of this endorsement:


        By:_____
                        Attorney-in-Fact

ENDORSEMENT NUMBER:  5

**AMEND LOSS TO INCLUDE CERTAIN FCPA PENALTIES**

      To be attached to and made a part of Policy No. 14-MG-16-A12939, issued to Syncora Holdings Ltd. by Houston Casualty Company.

In consideration of the premium charged, it is agreed that:

(1)      DEFINITION (G) **Loss** is amended to include civil penalties assessed against an **Insured Person** pursuant to Section 78dd-2(g)(2)(B) or Section 78ff(c)(2)(B) of the Foreign Corrupt Practices Act (15 U.S.C. §§78dd-2(g)(2)(B), 78ff(c)(2)(B)) (hereinafter, "**Certain FCPA Penalties**") Accordingly, **Certain FCPA Penalties** will not be deemed "fines" or "penalties," as such terms are used in DEFINITION (G).

(2)      Except as expressly provided for in paragraph (1) of this endorsement, coverage for **Certain FCPA Penalties** shall be subject to all of this Policy's terms and conditions, including but not limited to any and all EXCLUSIONS.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

      Effective date of this endorsement:

                    By:_____
                              Attorney-in-Fact

ENDORSEMENT NUMBER:  6

**AMEND DEFINITION OF DEFENSE COSTS**
**(EXPERT WITNESS FEES)**

To be attached to and made a part of Policy No. 14-MG-16-A12939, issued to Syncora Holdings Ltd. by Houston Casualty Company.

In consideration of the premium charged, it is agreed that DEFINITION (D) is deleted and replaced with the following:

(D) **Defense Costs** means reasonable fees (including expert witness fees), costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond) resulting from the investigation, adjustment, defense or appeal of a **Claim** against an **Insured Person** (or, with respect to **Securities Claims**, against any **Insured**), but excluding salaries, wages, benefits or overhead expenses of directors, officers or employees of the **Company**.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
Attorney-in-Fact

ENDORSEMENT NUMBER:  7

**AMEND DEFINITION OF WRONGFUL ACT**
**(SELLING SHAREHOLDER)**

To be attached to and made a part of Policy No. 14-MG-16-A12939, issued to Syncora Holdings Ltd. by Houston Casualty Company.

In consideration of the premium charged, it is agreed that:

(1)     DEFINITION (P) **Wrongful Act** is amended to include any actual or alleged act, error, misstatement, misleading statement, omission or breach of duty by an **Insured Person** in his or her capacity as a **Selling Shareholder** of the **Company**.

(2)     For purposes of this endorsement, **Selling Shareholder** means any natural person who sells a security as described in Section 12(a)(2) of the Securities Act of 1933 ("Civil liabilities arising in connection with prospectuses and communications") or any similar securities law or regulation of any state or any common law.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
            Attorney-in-Fact

ENDORSEMENT NUMBER:  8

**AMEND DEFINITION OF LOSS**
**(SARBANES-OXLEY SECTION 304 COSTS)**

To be attached to and made a part of Policy No. 14-MG-16-A12939, issued to Syncora Holdings Ltd. by Houston Casualty Company.

In consideration of the premium charged, it is agreed that:

(1)  DEFINITION (G) **Loss** is amended to include **S-Ox Section 304 Costs** arising from a **Claim** (subject to this Policy's terms and conditions, including but not limited to any applicable EXCLUSION).

(2)  For purposes of this endorsement, **S-Ox Section 304 Costs** means reasonable fees, costs and expenses consented to by the Insurer (including premiums or origination fees for any loan or bond) and incurred by the chief executive officer or chief financial officer of the **Named Corporation** solely to facilitate the return of amounts required to be repaid by such **Insured Person** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002; provided, that **S-Ox Section 304 Costs** will not include any amounts requested or required to be repaid pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002, and in no event shall the Insurer be liable for the payment, return, reimbursement, disgorgement or restitution of any such amounts.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
                    Attorney-in-Fact

ENDORSEMENT NUMBER:  9

**AMEND DEFINITION OF LOSS
(DODD-FRANK SECTION 954 COSTS)**

To be attached to and made a part of Policy No. 14-MG-16-A12939, issued to Syncora Holdings Ltd. by Houston Casualty Company.

In consideration of the premium charged, it is agreed that:

(1)     DEFINITION (G) **Loss** is amended to include **Dodd-Frank Section 954 Costs** arising from a **Claim** (subject to this Policy's terms and conditions, including but not limited to any applicable EXCLUSION).

(2)     For purposes of this endorsement, **Dodd-Frank Section 954 Costs** means reasonable fees, costs and expenses consented to by the Insurer (including premiums or origination fees for any loan or bond) and incurred by an **Insured Person** solely to facilitate the return of amounts required to be repaid by such **Insured Person** pursuant to Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010; provided, that **Dodd-Frank Section 954 Costs** will not include any amounts requested or required to be repaid pursuant to Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, and in no event shall the Insurer be liable for the payment, return, reimbursement, disgorgement or restitution of any such amounts.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
             Attorney-in-Fact

ENDORSEMENT NUMBER:  10

**EXTRADITION COVERAGE ENDORSEMENT**

To be attached to and made a part of Policy No. 14-MG-16-A12939, issued to Syncora Holdings Ltd. by Houston Casualty Company.

In consideration of the premium charged, it is agreed that:

(1)     The DEFINITIONS section of this Policy is amended to include the following:

   **Extradition** means any formal process by which an **Insured Person** is surrendered from one country to another country to face a criminal trial (or otherwise answer a criminal accusation) in connection with his or her actual or alleged **Wrongful Acts**.

(2)     Where permitted by law:

   (a)     DEFINITION (B) **Claim** is amended to include:

      (i)     any official request for **Extradition** of an **Insured Person**; or

      (ii)     the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition**.

   (b)     DEFINITION (D) **Defense Costs** is amended to include reasonable legal fees, costs and expenses consented to by the Insurer resulting from an **Insured Person's** lawful:

      (i)     opposition or challenge to or defense against the **Extradition** of such **Insured Person**; or

      (ii)     appeal of an order granting **Extradition** of such **Insured Person**.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
                    Attorney-in-Fact

ENDORSEMENT NUMBER:  11

**PRIOR ACTS EXCLUSION (BROAD-FORM)**

To be attached to and made a part of Policy No. 14-MG-16-A12939, issued to Syncora Holdings Ltd. by Houston Casualty Company.

In consideration of the premium charged, it is agreed that the Insurer will not be liable to make any payment of **Loss** in connection with a **Claim** arising out of, based upon or attributable to any act, error, omission or other wrongdoing committed or allegedly committed, in whole or in part, prior to 5/3/2010.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
              Attorney-in-Fact

ENDORSEMENT NUMBER:  12

**AMEND EXCLUSION (C) ENDORSEMENT –
A-SIDE CARVEBACK**

To be attached to and made a part of Policy No. 14-MG-16-A12939, issued to Syncora Holdings Ltd. by Houston Casualty Company.

In consideration of the premium charged, it is agreed that EXCLUSION (C) is amended to read in its entirety as follows:

(C)     for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, disease or death of any person or damage to or destruction of any tangible property, including the loss of use thereof, or for injury from any actual or alleged libel, slander, defamation or disparagement or violation of a person's right of privacy; provided, that this EXCLUSION (C) will not apply to:

(1)     **Securities Claims**, or

(2)     **Claims** for **Loss** payable under INSURING AGREEMENT (A);

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
        Attorney-in-Fact

991-444                         Page 1 of 1
Ed. 01/05

ENDORSEMENT NUMBER:  13

**WHISTLEBLOWER CARVEBACK TO
INSURED VS. INSURED EXCLUSION**

To be attached to and made a part of Policy No. 14-MG-16-A12939, issued to Syncora Holdings Ltd. by Houston Casualty Company.

In consideration of the premium charged, it is agreed that:

(1)　　An **Insured Person's** providing **Specific Assistance** in a **Claim** brought by a shareholder of the **Company** will not alone be deemed "solicitation, assistance or active participation" for purposes of subsection (1) of EXCLUSION (F).

(2)　　For purposes of this endorsement, **Specific Assistance** means assistance consisting of actions which are protected under Section 806 of the Sarbanes-Oxley Act of 2002 (or similar "whistleblower" protection provision of applicable federal, state, local or foreign securities law).

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
　　　　　Attorney-in-Fact

ENDORSEMENT NUMBER:  14

## AMEND CARVEBACK TO INSURED VS. INSURED EXCLUSION
## (CREDITORS' COMMITTEE AND ASSIGNEES)

To be attached to and made a part of Policy No. 14-MG-16-A12939, issued to Syncora Holdings Ltd. by Houston Casualty Company.

In consideration of the premium charged, it is agreed that the clause at the end of EXCLUSION (F) (beginning "provided, that this EXCLUSION (F)" and ending "duly appointed with respect to the **Company**") is deleted and replaced with the following:

provided, that this EXCLUSION (F) will not apply to **Claims** brought by a trustee in bankruptcy, receiver, conservator, rehabilitator, liquidator, creditors' committee or other similar official duly appointed with respect to the **Company**, or to **Claims** brought by an assignee of the foregoing;

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
                    Attorney-in-Fact

ENDORSEMENT NUMBER:  15

**WHISTLEBLOWER CARVEBACK TO**
**INSURED VS. INSURED EXCLUSION**

      To be attached to and made a part of Policy No. 14-MG-16-A12939, issued to Syncora Holdings Ltd. by Houston Casualty Company.

In consideration of the premium charged, it is agreed that EXCLUSION (F) will not apply to the extent a **Claim** is brought and maintained by an employee of the **Company** pursuant to a federal or state whistleblower protection statute or a rule or regulation promulgated thereunder.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

      Effective date of this endorsement:

      By:_____
               Attorney-in-Fact

ENDORSEMENT NUMBER:  16

**CARVEBACK INSURED VS. INSURED EXCLUSION –
CLAIMS OUTSIDE COMMON LAW COUNTRIES**

To be attached to and made a part of Policy No. 14-MG-16-A12939, issued to Syncora Holdings Ltd. by Houston Casualty Company.

In consideration of the premium charged, it is agreed that:

(1)     Solely for purposes of this endorsement:

     (a)     "**Foreign Jurisdiction**" means any jurisdiction other than the United States, Canada or any common law country (or any territory or possession thereof).

     (b)     "**Foreign Subsidiary**" means any **Subsidiary** formed and operating in a **Foreign Jurisdiction**.

(2)     EXCLUSION (F) will not apply to any **Claim** brought and maintained in a **Foreign Jurisdiction** by an **Insured Person** who is a director or officer (or functional equivalent) of a **Foreign Subsidiary** against such **Foreign Subsidiary** or a director or officer (of functional equivalent) thereof.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
Attorney-in-Fact

ENDORSEMENT NUMBER:  17

**DOMESTIC PARTNER COVERAGE EXTENSION**

To be attached to and made a part of Policy No. 14-MG-16-A12939, issued to Syncora Holdings Ltd. by  Houston Casualty Company.


In consideration of the premium charged, it is agreed that the term "spouse," as used in EXTENSION (B) of this Policy, will include an **Insured Person's** domestic partner.  As used in this endorsement, "domestic partner" means a natural person qualifying as a domestic partner under the provisions of applicable federal, state or local law or under the provisions of a formal program established by the **Company**.


All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:


By:_____
                    Attorney-in-Fact

ENDORSEMENT NUMBER:  18

**AMEND NOTICE OF CLAIMS PROVISION**
**(FAX OR E-MAIL)**

To be attached to and made a part of Policy No. 14-MG-16-A12939, issued to Syncora Holdings Ltd. by Houston Casualty Company.

In consideration of the premium charged, it is agreed that the following is added at the end of CONDITION (B)(4):

Written notices to the Insurer under this CONDITION (B) may also be provided by facsimile to (860) 676-1737 or by e-mail to usclaims@hcc-global.com.  The date of the Insurer's receipt of such notice will constitute the date of notice.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
                   Attorney-in-Fact

ENDORSEMENT NUMBER:  19

**LIBERALIZATION REGARDING CONFLICTING ENDORSEMENTS**

To be attached to and made a part of Policy No. 14-MG-16-A12939, issued to Syncora Holdings Ltd. by Houston Casualty Company.

In consideration of the premium charged, it is agreed that if two or more endorsements to this Policy address the same policy provision but conflict in any way regarding such provision, the Insurer will apply the endorsement that is most favorable to the Insured with respect to such provision.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
    Attorney-in-Fact

ENDORSEMENT NUMBER:  20

**SERVICE OF SUIT**

To be attached to and made a part of Policy No. 14-MG-16-A12939, issued to Syncora Holdings Ltd. by Houston Casualty Company.


In consideration of the premium charged it is hereby agreed and understood that pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Insurer hereby designates the Commissioner Superintendent, or Director of Insurance or other officer specified for that purpose in the statute, and his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted in any court of competent jurisdiction by or on behalf of the **Insured** or any beneficiary hereunder arising out of this contract of insurance, and hereby designates The Claims Manager, HCC Global Financial Products, LLC, 8 Forest Park Drive, Farmington, CT 06032, as the entity to whom said officer is authorized to mail such process or a true copy thereof.


All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:


By:  _____
                 Attorney-in-Fact

ENDORSEMENT NUMBER:  21

**DELETE RETENTION WAIVER FOR NO LIABILITY**

To be attached to and made a part of Policy No. 14-MG-16-A12939, issued to Syncora Holdings Ltd. by Houston Casualty Company.


In consideration of the premium charged:

(1)      DEFINITION (I) **No Liability** is deleted in its entirety.

(2)      CONDITION (A) <u>Limit of Liability and Retention</u>, subsection (5), is deleted in its entirety.


All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:


By:_____
                            Attorney-in-Fact

ENDORSEMENT NUMBER:  22

**AMEND CHANGE IN CONTROL PROVISION**

      To be attached to and made a part of Policy No. 14-MG-16-A12939, issued to Syncora Holdings Ltd. by Houston Casualty Company.


In consideration of the premium charged, it is hereby understood and agreed that CONDITION (F) <u>Changes in Control</u> is amended to read as follows:

(F)     <u>Changes in Control</u>

     (1)     If, during the **Policy Period**, any of the following transactions or events (each a "Change in Control") occurs with respect to the **Named Corporation**:

          (a)     the **Named Corporation** merges into or consolidates with another entity such that the **Named Corporation** is not the surviving entity, or

          (b)     another entity, person or group of entities and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other entity(ies) or person(s) of more than 50% of the outstanding securities representing the present right to vote for the election of directors of the **Named Corporation**;

          then coverage under this Policy will continue in full force and effect until the end of the **Policy Period** with respect to **Claims** for **Wrongful Acts** committed or allegedly committed before the effective date of such Change in Control, but coverage will cease with respect to **Claims** for **Wrongful Acts** committed or allegedly committed thereafter and the premium will be considered fully earned in consideration of the coverage extended.

     (2)     If, during the **Policy Period**, any of the following transactions or events (each a "Change in Control") occurs with respect to a **Subsidiary**:

          (a)     the **Subsidiary** ceases to be a **Subsidiary**;

          then coverage under this Policy with respect to **Claims** against such **Subsidiary** or any **Insured Person** thereof will continue in full force and effect until the end of the **Policy Period** with respect to **Claims** for **Wrongful Acts** committed or allegedly committed before the effective date of such Change in Control, but coverage under this Policy with respect to **Claims** against such **Subsidiary** or any **Insured Person** thereof will cease with respect to **Claims** for **Wrongful Acts** committed or allegedly committed thereafter.


All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

     Effective date of this endorsement:


          By:_____
                      Attorney-in-Fact

ENDORSEMENT NUMBER:  23

**DELETE INSURING AGREEMENT (A)**

To be attached to and made a part of Policy No. 14-MG-16-A12939, issued to Syncora Holdings Ltd. by Houston Casualty Company.

In consideration of the premium charged, it is agreed that INSURING AGREEMENT (A), and all references thereto, are deleted from the Policy.  Accordingly, in no event shall any coverage be afforded under INSURING AGREEMENT (A) of this Policy.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:

By:_____
                        Attorney-in-Fact

ENDORSEMENT NUMBER:  24

**TIE-IN-LIMITS**

To be attached to and made a part of Policy No. 14-MG-16-A12939, issued to Syncora Holdings Ltd. by Houston Casualty Company.


In consideration of the premium charged, it is agreed that the Insurer will not be liable to make any payments under this Policy in any amounts which, when added to the amounts of any payments made by Houston Casualty Company under policy number 14-MG-16-A12940, would exceed $20,000,000.  The Insurer's aggregate limit of liability under this Policy will be reduced, and may be exhausted, by payments made by Houston Casualty Company.



All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the Policy or is not to be effective with the Policy.

Effective date of this endorsement:


By:_____
       Attorney-in-Fact

# HOUSTON CASUALTY COMPANY

## Directors, Officers and Corporate Liability Insurance Policy



**D&O Group**
8 Forest Park Drive, Farmington, Connecticut 06032
main 860 674 1900   facsimile 860 676 1737

# HOUSTON CASUALTY COMPANY

### DIRECTORS, OFFICERS AND CORPORATE LIABILITY INSURANCE POLICY

**This is a claims made policy.  Please read it carefully.**

In consideration of the payment of the premium, and in reliance upon the statements made in the **Application**, including attachments, all of which are made a part hereof and deemed attached hereto, and subject to the Declarations and the limitations, conditions, provisions, any endorsements to and all other terms of this Policy, the Insurer and the **Insureds** agree as follows:

INSURING AGREEMENTS

(A)    The Insurer will pay to or on behalf of the **Insured Persons Loss** arising from **Claims** first made during the **Policy Period** or Discovery Period (if applicable), against the **Insured Persons** for **Wrongful Acts**, except when and to the extent that the **Company** has paid such **Loss** to or on behalf of the **Insured Persons** as indemnification or advancement.

(B)    The Insurer will pay to or on behalf of the **Company Loss** arising from:

   (1)    **Claims** first made during the **Policy Period** or the Discovery Period (if applicable) against the **Insured Persons** for **Wrongful Acts**, if the **Company** has paid such **Loss** to or on behalf of the **Insured Persons** as indemnification or advancement, and/or

   (2)    **Securities Claims** first made during the **Policy Period** or the Discovery Period (if applicable) against the **Company** for **Wrongful Acts**.

DEFINITIONS

(A)    **Application** means the application attached to and forming part of this Policy, including any materials submitted in connection with such application, all of which are deemed a part of the Policy.

(B)    **Claim** means:

   (1)    any written demand for monetary or non-monetary relief,

   (2)    any civil proceeding commenced by service of a complaint or similar pleading,

   (3)    any arbitration, mediation or other similar dispute resolution proceeding,

   (4)    any criminal proceeding commenced by return of an indictment,

   (5)    the receipt by an **Insured Person** of a target letter or similar document in connection with a criminal investigation of such **Insured Person**, or

   (6)    any administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

   including any appeal from any such proceeding.

(C)    **Company** means the **Named Corporation** and any **Subsidiary** thereof.

(D)    **Defense Costs** means reasonable fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond) resulting from the investigation,

HOUSTON CASUALTY COMPANY

adjustment, defense or appeal of a **Claim** against an **Insured Person** (or, with respect to **Securities Claims**, against any **Insured**), but excluding salaries, wages, benefits or overhead expenses of directors, officers or employees of the **Company**.

(E)　　**Insured** means the **Insured Persons** and the **Company**.

(F)　　**Insured Person** means:

　　　　(1)　　any past, present or future director or officer of the **Company**, including any person in a position which is the functional equivalent of a director or officer with respect to any entity included within the definition of **Company** or **Outside Entity** located outside the United States, and

　　　　(2)　　with respect only to **Securities Claims**, any past, present or future employee of the **Company**.

(G)　　**Loss** means **Defense Costs** and any damages, settlements, judgments or other amounts (including punitive or exemplary damages and the multiplied portion of any multiplied damage award, if and where insurable by law) that:

　　　　(1)　　an **Insured Person** is legally obligated to pay as a result of any **Claim**, or

　　　　(2)　　the **Company** is legally obligated to pay as a result of any **Securities Claim**;

　　　　provided, that **Loss** will not include wages, fines, taxes or penalties or matters which are uninsurable under the law pursuant to which this Policy is construed.  For purposes of determining whether punitive or exemplary damages or the multiplied portion of any multiplied damage award arising from any **Claim** shall be insurable by law, the Insurer agrees to abide by the law of whichever jurisdiction is applicable to such **Claim** and is most favorable to the **Insureds** in that regard.

(H)　　**Named Corporation** means the entity designated as such in Item 1 of the Declarations.

(I)　　**No Liability** means all defendant **Insureds** obtain by reason of a motion to dismiss, motion for summary judgment or trial a final non-appealable judgment in their favor.

(J)　　**Outside Capacity** means service by an **Insured Person** as a director, officer, trustee, regent or governor of, or in another equivalent executive position with respect to, an **Outside Entity**, during such time that such service is at the request of the **Company**.

(K)　　**Outside Entity** means any not-for-profit corporation, association, organization or entity.

(L)　　**Policy Period** means the period set forth in Item 2 of the Declarations, subject to prior termination or cancellation pursuant to CONDITION (E).

(M)　　**Pollutants** means any seepage, pollution or contamination, including but not limited to any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste, and materials to be recycled, reconditioned or reclaimed.

(N)　　**Securities Claim** means a **Claim** which:

　　　　(1)　　is brought by or on behalf of one or more securities holders of the **Company** in their capacity as such, or

　　　　(2)　　arises from the purchase or sale of, or offer to purchase or sell, any securities issued by the **Company**, whether such purchase, sale or offer involves a transaction with the **Company** or occurs in the open market.

(O)　　**Subsidiary** means any entity:

**HOUSTON CASUALTY COMPANY**

  (1)  during any time on or before the inception of the **Policy Period** in which the **Named Corporation** owns or owned more than 50% of the issued and outstanding securities representing the right to vote for the election of such entity's directors (or the legal equivalent thereof), either directly or indirectly through one or more other **Subsidiaries**; or

  (2)  created or acquired during the **Policy Period** during any time in which, as a result of such creation or acquisition, the **Named Corporation** owns more than 50% of the issued and outstanding securities representing the right to vote for the election of such entity's directors (or the legal equivalent thereof), either directly or indirectly through one or more other **Subsidiaries**.

  An entity ceases to be a **Subsidiary** when the **Named Corporation** ceases to own more than 50% of its issued and outstanding securities representing the right to vote for the election of such entity's directors (or the legal equivalent thereof), either directly or indirectly through one or more other **Subsidiaries**.  The coverage afforded under this Policy with respect to **Claims** against a **Subsidiary** or any **Insured Person** thereof will apply only in respect of **Wrongful Acts** committed or allegedly committed after the effective time that such entity becomes a **Subsidiary** and prior to the time that such entity ceases to be a **Subsidiary**.

(P)  **Wrongful Act** means any:

  (1)  actual or alleged act, error, misstatement, misleading statement, omission or breach of duty:

    (a)  by an **Insured Person** in his or her capacity as such, including in an **Outside Capacity**, or

    (b)  with respect only to **Securities Claims**, by the **Company**; or

  (2)  matter claimed against an **Insured Person** solely by reason of his or her service in such capacity or in an **Outside Capacity**.

## EXCLUSIONS

Unless otherwise specifically stated or provided for in CONDITION (D)(2) or elsewhere in this Policy, the Insurer will not be liable to make any payment of **Loss** in connection with a **Claim**:

(A)  arising out of based upon or attributable to the gaining by any **Insured** of any profit or advantage to which such **Insured** was not legally entitled; provided, that this EXCLUSION (A) will apply only if there has been a final adjudication adverse to such **Insured** establishing that the **Insured** gained such a profit or advantage;

(B)  arising out of, based upon or attributable to the commission by any **Insured** of any criminal or deliberately fraudulent or dishonest act; provided, that this EXCLUSION (B) will apply only if there has been a final adjudication adverse to such **Insured** establishing that the **Insured** so acted;

(C)  for any actual or alleged bodily injury, sickness, mental anguish, emotional distress, disease or death of any person or damage to or destruction of any tangible property, including the loss of use thereof, or for injury from any actual or alleged libel, slander, defamation or disparagement or violation of a person's right of privacy; provided, that this EXCLUSION (C) will not apply to **Securities Claims**;

(D)  for the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants** or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; provided, that this EXCLUSION (D) will not apply to **Securities Claims**;

HOUSTON CASUALTY COMPANY

(E)      for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 or any regulations promulgated thereunder or of any similar law or regulation;

(F)      brought by or on behalf of, or in the name or right of, the **Company**, whether directly or derivatively, or any **Insured Person**, unless such **Claim** is:

      (1)      brought and maintained independently of, and without the solicitation, assistance or active participation of, the **Company** or any **Insured Person**, or

      (2)      for an actual or alleged wrongful termination of employment, or

      (3)      brought or maintained by an **Insured Person** for contribution or indemnity and directly results from another **Claim** covered under this Policy, or

      (4)      brought and maintained by an employee of the **Company** solely to enforce his or her rights as a holder of securities issued by the **Company**;

      provided, that this EXCLUSION (F) will not apply to **Claims** brought by a trustee in bankruptcy, receiver, conservator, rehabilitator, liquidator or other similar official duly appointed with respect to the **Company**;

(G)      by or on behalf of, or in the name or right of, any **Outside Entity**, whether directly or derivatively, against an **Insured Person** for a **Wrongful Act** in his or her **Outside Capacity** with respect to such **Outside Entity**, unless such **Claim** is brought and maintained independently of, and without the solicitation, assistance or active participation of, the **Outside Entity**, the **Company** or any **Insured Person**;

(H)      arising out of, based upon or attributable to facts or circumstances alleged, or to the same or related **Wrongful Acts** alleged or contained, in any claim which has been reported, or with respect to which any notice has been given, under any policy of which this Policy is a renewal or replacement or which it may succeed in time; or

(I)      arising out of, based upon or attributable to any pending or prior litigation as of the inception date of this Policy, or alleging or derived from the same or essentially the same facts or circumstances as alleged in such pending or prior litigation.

For purposes of determining the application of the above EXCLUSIONS, no **Wrongful Act** of any **Insured Person** will be imputed to any other **Insured Person** who did not have actual knowledge of, or directly participate in the commission of, such **Wrongful Act** and, except for **Wrongful Acts** of the **Company's** chairman of the board, chief executive officer, president, chief financial officer or general counsel, no **Wrongful Act** of any **Insured Person** will be imputed to the **Company**.

DISCOVERY PERIOD

If the Insurer or the **Named Corporation** fails or refuses to renew this Policy or if the **Named Corporation** cancels this Policy, any **Insured** will have the right, upon payment of the Discovery Period Premium set forth in Item 7(a) of the Declarations, to an extension of the coverage granted by this Policy for the period set forth in Item 7(b) of the Declarations following the effective date of such cancellation or non-renewal (the "Discovery Period"), but only with respect to any **Wrongful Act** actually or allegedly taking place before the date of such cancellation or non-renewal.  A written request for this extension, together with payment of the Discovery Period Premium, must be made within thirty (30) days after the effective date of cancellation or non-renewal of the Policy.  Such Discovery Period Premium will be deemed to be fully earned as of the inception of the Discovery Period.  This clause and the right contained within it will not apply if this Policy is terminated by the Insurer for failure to pay any premium when due.

EXTENSIONS

(A)      Subject to its terms and conditions, this Policy will afford coverage for **Claims** for **Wrongful Acts** of an **Insured Person** if such **Claims** are made against the estates, heirs, legal representatives or

**HOUSTON CASUALTY COMPANY**

assigns of an **Insured Person** who is deceased or against the legal representatives or assigns of an **Insured Person** who is incompetent, insolvent or bankrupt, to the extent that such **Claims** would have been covered by this Policy in the absence of such death, incompetence, insolvency or bankruptcy.

(B)     Subject to its terms and conditions, this Policy will afford coverage for **Claims** for **Wrongful Acts** of an **Insured Person** if such **Claims** are made against the **Insured Person's** lawful spouse solely by reason of such spouse's legal status as a spouse of the **Insured Person** or such spouse's ownership interest in property which the claimant seeks as recovery for alleged **Wrongful Acts** of the **Insured Person**.  For purposes of the Policy, amounts which such spouse becomes legally obligated to pay by reason of such **Claim** will be treated as **Loss** which the **Insured Person** is legally obligated to pay on account of the **Claim** made against the **Insured Person**.  This coverage extension does not apply, however, to the extent the **Claim** alleges any wrongful act or omission by the **Insured Person's** spouse.

CONDITIONS

(A)     <u>Limit of Liability and Retention</u>

　　　(1)     The Insurer's maximum aggregate liability for all **Loss** on account of all **Claims** first made during the same **Policy Period**, whether covered under one or more INSURING AGREEMENTS, will not exceed the Limit of Liability set forth in Item 3 of the Declarations.

　　　(2)     **Defense Costs** will be part of and not in addition to the Limit of Liability, and payment of **Defense Costs** will reduce the Limit of Liability.  **Defense Costs**, as incurred, will also be applied against the retention.

　　　(3)     The retention stated in Item 4(b) of the Declarations will apply to **Loss**, including **Defense Costs**, which the **Company** is required or permitted to pay as indemnification or advancement to or on behalf of the **Insured Persons**, whether or not such **Loss** is actually paid, unless the **Company** is unable to pay such **Loss** as indemnification or advancement solely by reason of its financial insolvency.  For purposes of this CONDITION (A)(3), the certificate of incorporation, charter, articles of association or other organizational documents of the **Named Corporation**, each **Subsidiary** and each **Outside Entity**, including the bylaws and resolutions thereof, will be deemed to have been adopted or amended to provide indemnification and advancement to the **Insured Persons** to the fullest extent permitted by law.

　　　(4)     The Insurer will be liable only for the amount of **Loss** in connection with any **Claim**, which is in excess of the applicable retention stated in Item 4 of the Declarations.  Such retention is to be borne by the **Insureds** and remain uninsured.  A single retention will apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**.

　　　(5)     Notwithstanding the foregoing, with respect to **Securities Claims** the retentions stated in Items 4(b) and 4(c) of the Declarations will apply only to **Defense Costs**; provided, that if a **Securities Claim** is finally resolved by a determination of **No Liability**, no retention will apply to such **Securities Claim** even as respects **Defense Costs** and the Insurer will thereupon reimburse **Defense Costs** within the retention which shall already have been paid by the **Insureds**.

　　　(6)     One retention amount will apply to the covered portion of each and every single **Claim**.  If a single **Claim** is covered under more than one INSURING AGREEMENT, the retentions stated in Item 4 of the Declarations will be applied separately to the portions of the **Claim** covered by each INSURING AGREEMENT, and the sum of the retentions so applied will constitute the retention for each single **Claim**, which in total will not exceed the largest of the applicable retentions.

**HOUSTON CASUALTY COMPANY**

(B)     Notice of **Claims** and Reporting Provisions

(1)     The **Insureds** must, as a condition precedent to the obligations of the Insurer under this Policy, give written notice, including full details, to the Insurer of any **Claim** as soon as practicable after it is made.

(2)     If written notice of a **Claim** has been given to the Insurer pursuant to CONDITION (B)(1) above, then any **Claim** subsequently made against the **Insureds** and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** of which such notice has been given, or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged in the **Claim** of which such notice has been given, will be considered to have been made at the time such notice was given.

(3)     If, during the **Policy Period** or the Discovery Period (if applicable), the **Insureds** become aware of any circumstances which may reasonably be expected to give rise to a **Claim** against the **Insureds** and if, before the end of the **Policy Period** or the Discovery Period (if applicable), the **Insureds** give written notice to the Insurer of the circumstances and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, potential claimants and the consequences which have resulted or may result from such **Wrongful Act**, then any **Claim** subsequently made against the **Insureds** and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** described in such notice will be considered to have been made at the time such notice of circumstances was given.

(4)     All notices under this CONDITION (B) must refer to the Policy Number, must be in writing, must request coverage under this Policy, and must be given by certified mail or prepaid express courier to the address set forth in Item 6 of the Declarations.

(C)     Interrelationship of **Claims**

All **Claims** alleging, arising out of, based upon or attributable to the same facts, circumstances, situations, transactions or events or to a series of related facts, circumstances, situations, transactions or events will be considered to be a single **Claim** and will be considered to have been made at the time the earliest such **Claim** was made.

(D)     **Defense Costs**, Settlements, Allocation of **Loss**, Priority of Payments

(1)     The Insurer will have no duty under this Policy to defend any **Claim**.  The **Insureds** must defend any **Claim** made against them.  The **Insureds** may not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** without the Insurer's prior written consent.  Only those settlements, stipulated judgments and **Defense Costs** to which the Insurer has consented will be recoverable as **Loss** under this Policy.  The Insurer's consent may not be unreasonably withheld; provided, that the Insurer will be entitled to effectively associate in the defense and the negotiation of any settlement of any **Claim**.

(2)     The Insurer will pay covered **Defense Costs** on an as-incurred basis.  If it is finally determined that any **Defense Costs** paid by the Insurer are not covered under this Policy, the **Insureds** agree to repay such non-covered **Defense Costs** to the Insurer.

(3)     If **Loss** covered by this Policy and loss not covered by this Policy are both incurred in connection with a single **Claim**, either because the **Claim** includes both covered and uncovered matters, or because the **Claim** is made both against **Insured Persons** (or, with respect only to **Securities Claims**, against **Insureds**) and against others not included within the definition of **Insured Person** (or, with respect only to **Securities Claims**, the definition of **Insured**), the **Insureds** and the Insurer agree to use their best efforts to determine a fair and proper allocation of all such amounts, taking into account the relative legal and financial exposures of the parties to the **Claim** and the relative benefits

HOUSTON CASUALTY COMPANY

to be obtained by the resolution of the **Claim**. The Insurer will be obligated to pay only those amounts or portions of **Loss** allocated to covered matters claimed against **Insured Persons** (or, with respect only to **Securities Claims**, against **Insureds**). If the **Insureds** and the Insurer are unable to agree upon an allocation, then until a final allocation is agreed upon or determined pursuant to the provisions of this Policy and applicable law, the Insurer will be obligated to make an interim payment of that amount or portion of **Loss**, including **Defense Costs**, which the parties agree is not in dispute.

(4)     If the Insurer is obligated to pay **Loss**, including **Defense Costs**, under more than one INSURING AGREEMENT, whether in connection with a single **Claim** or multiple **Claims**, the Insurer will first pay any **Loss** payable under INSURING AGREEMENT (A) and, if the Insurer concludes that the amount of all **Loss**, including **Defense Costs**, is likely to exceed the Insurer's Limit of Liability, the Insurer shall be entitled to withhold some or all of any **Loss** payable under INSURING AGREEMENT (B)(1) or (B)(2) to ensure that as much of the Limit of Liability as possible is available for the payment of **Loss** under INSURING AGREEMENT (A). If no **Loss** is payable under INSURING AGREEMENT (A), or if the Insurer's obligations under INSURING AGREEMENT (A) have been satisfied, then, subject to the Insurer's Limit of Liability as set forth in Item 3 of the Declarations, the Insurer will pay such **Loss** as it is required to pay under INSURING AGREEMENT (B)(1) or (B)(2) in such manner and, in the event of multiple **Claims**, apportioned among such **Claims** as the **Named Corporation** shall direct in writing.

(E)     Cancellation or Nonrenewal

(1)     The Insurer may cancel this Policy for non-payment of premium by sending not less than ten (10) days notice to the **Named Corporation** at its last known address. The Insurer may not otherwise cancel this Policy.

(2)     The **Named Corporation** may cancel this Policy by mailing the Insurer written notice stating when such cancellation will be effective; provided, that the **Named Corporation** may not cancel this Policy after the effective date of any acquisition of the **Named Corporation** as described in CONDITION (F) below. If the **Named Corporation** cancels this Policy, the Insurer will retain the customary short rate premium. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment of unearned premium is not a condition of cancellation.

(3)     If the Insurer elects not to renew this Policy, the Insurer must give the **Named Corporation** notice of non-renewal no less than sixty (60) days before the end of the **Policy Period**.

(4)     If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period will be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(F)     Changes in Control

(1)     If, during the **Policy Period**, any of the following transactions or events (each a "Change in Control") occurs with respect to the **Named Corporation**:

(a)     the **Named Corporation** merges into or consolidates with another entity such that the **Named Corporation** is not the surviving entity, or

(b)     another entity, person or group of entities and/or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other entity(ies) or person(s) of more than 50% of the outstanding securities representing the present right to vote for the election of directors of the **Named Corporation**, or

**HOUSTON CASUALTY COMPANY**

(c)      a trustee in bankruptcy, receiver, conservator, rehabilitator, liquidator or other similar official is duly appointed with respect to the **Named Corporation**;

then coverage under this Policy will continue in full force and effect until the end of the **Policy Period** with respect to **Claims** for **Wrongful Acts** committed or allegedly committed before the effective date of such Change in Control, but coverage will cease with respect to **Claims** for **Wrongful Acts** committed or allegedly committed thereafter and the premium will be considered fully earned in consideration of the coverage extended.

(2)      If, during the **Policy Period**, any of the following transactions or events (each a "Change in Control") occurs with respect to a **Subsidiary**:

(a)      the **Subsidiary** ceases to be a **Subsidiary**, or

(b)      a trustee in bankruptcy, receiver, conservator, rehabilitator, liquidator or other similar official is duly appointed with respect to the **Subsidiary**;

then coverage under this Policy with respect to **Claims** against such **Subsidiary** or any **Insured Person** thereof will continue in full force and effect until the end of the **Policy Period** with respect to **Claims** for **Wrongful Acts** committed or allegedly committed before the effective date of such Change in Control, but coverage under this Policy with respect to **Claims** against such **Subsidiary** or any **Insured Person** thereof will cease with respect to **Claims** for **Wrongful Acts** committed or allegedly committed thereafter.

(G)    <u>Other Insurance and Other Indemnification</u>

(1)      Such insurance as is provided by this Policy will apply only as excess over and will not contribute with any other valid and collectible insurance.

(2)      All coverage for **Loss** from **Claims** against **Insured Persons** for **Wrongful Acts** in their **Outside Capacities** will be specifically excess of, and will not contribute with,

(a)      any other insurance available to such **Insured Persons** by reason of their service in **Outside Capacities**, and

(b)      any indemnification available to such **Insured Persons** in connection with their service in **Outside Capacities** from any source other than the **Company**, including but not limited to **Outside Entities**.

(H)    <u>Cooperation and Subrogation</u>

(1)      In the event of any notice under CONDITION (B) of a **Claim** or of circumstances which may reasonably be expected to give rise to a **Claim**, the **Insureds** will give the Insurer all information, assistance and cooperation that the Insurer may reasonably request with respect thereto.

(2)      In the event of any payment under this Policy, the Insurer will be subrogated to the extent of such payment to all of the **Insureds'** rights of recovery, including without limitation the **Insured Persons'** rights to indemnification or advancement from the **Company**. The **Insureds** must execute all papers required and do everything necessary to secure such rights and to enable the Insurer to bring suit in their name.

(I)    <u>No Action against the Insurer</u>

No action may be taken against the Insurer unless, as a condition precedent thereto, there has been full compliance with all of the terms of this Policy and until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against an **Insured** after

**HOUSTON CASUALTY COMPANY**

actual trial or by written agreement of the **Insured**, the claimant and the Insurer.  No person or organization will have any right under this Policy to join the Insurer as a party to any action against the **Insureds** to determine the Insurer's liability; nor may the Insurer be impleaded by the **Insureds** or their legal representatives in any such action.

(J)   <u>Notices and Authority</u>

By acceptance of this Policy, the **Insureds** agree that the **Named Corporation** may act on behalf of all **Insureds** with respect to the giving and receiving of any notices, the payment of premiums and the receiving of any return premium, the cancellation or renewal of this Policy and the acceptance of any amendments thereto.

(K)   <u>Assignment</u>

No assignment of interest under this Policy will bind the Insurer without the Insurer's written consent.

(L)   <u>Titles and Headings</u>

The titles and headings to the various paragraphs and sections in this Policy, including endorsements attached, are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such paragraphs and sections to which they relate.

(M)   <u>Representations and Severability</u>

The **Insureds** represent that the particulars and statements contained in the **Application** are true, accurate and complete and are deemed material to the acceptance of the risk assumed by the Insurer under this Policy.  This Policy is issued in reliance upon the truth of such representations. No knowledge or information possessed by any **Insured** will be imputed to any other **Insured** except for material facts or information known to the person or persons who signed the **Application**.  If any of the particulars or statements in the **Application** is untrue, this Policy will be void with respect to any **Insured** who knew of such untruth or to whom such knowledge is imputed.

(N)   <u>Changes</u>

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer will not effect a waiver or a change in any part of this Policy or stop the Insurer from asserting any right under the terms of this Policy.  This Policy cannot be waived or changed, except by written endorsement issued to form a part of this Policy.

(O)   <u>Entire Agreement</u>

By acceptance of this Policy, the **Insureds** and the Insurer agree that this Policy (including the **Application** and any materials submitted therewith) and any written endorsements attached hereto constitute the entire agreement between the parties with respect to this insurance.

(P)   <u>Territory</u>

This Policy applies to **Wrongful Acts** actually or allegedly taking place or **Claims** made anywhere in the world.

(Q)   <u>Conformity to Statute</u>

Any terms of this Policy which are in conflict with the terms of any applicable laws construing this Policy, including any endorsement to this Policy which is required by any state Department of Insurance (or equivalent authority) ("State Amendatory Endorsement"), are hereby amended to conform to such laws.  Nothing herein will be construed to restrict the terms of any State

**HOUSTON CASUALTY COMPANY**

Amendatory Endorsement.  In addition, to the extent permissible by law, nothing in any State Amendatory Endorsement will be construed to restrict the terms of this Policy.

In witness whereof the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations Page by a duly authorized representative of the Insurer.

Secretary                    President